IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANA MAXWELL, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-CV-1939 |
| | : | |
| JAMIE SOBER, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**GALLAGHER, J.**                                                                                      **OCTOBER 8, 2021**

Plaintiff Dana Maxwell, a prisoner currently incarcerated at SCI-Phoenix, filed this civil action pursuant to 42 U.S.C. § 1983 based on allegations related to his placement in restricted housing ("RHU"), the grievance process, and the timing and process of returning him to general population. Maxwell names as Defendants: (1) Jamie Sober, Warden of SCI-Phoenix, (2) "Ms. Strenkoski," the A-Block Unit Manager,[1] (3) Sgt. Curley and (4) Officer Cramb.[2] Maxwell seeks to proceed *in forma pauperis* and has submitted a copy of his institutional account statement. For the following reasons, the Court will grant Maxwell leave to proceed *in forma*

---

[1] Throughout his Complaint, Maxwell states a clear intention to sue Strenkoski, the Unit Manager for the RHU unit where he was housed. Occasionally within the Complaint and in the Exhibits, Clark is described as the relevant Defendant and Unit Manager. It appears to the Court that Maxwell is using these names interchangeably, though it is unclear why. Ultimately, each of the claims alleged against Strenkoski are dismissed with prejudice, for the reasons set forth below. To the extent that Maxwell intends to also sue Clark as a fifth defendant, the claims against Clark are dismissed with prejudice for the same reasons as are set forth in regard to Strenkoski.

[2] Defendant Cramb's name is not spelled consistently in the Complaint. The Court will use the spelling contained in the caption of the Complaint.

1

*pauperis* and dismiss his Complaint in part with prejudice and in part without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I. FACTUAL ALLEGATIONS[3]

Maxwell alleges that on October 19, 2020, new rotations for cell outings were implemented in H-block, his housing unit. Maxwell objected to the change, believing that 6:30 AM was too early, so he stated to the other men in his housing unit, "We need to stick together…." (ECF No. 2-1 at 10.)[4] Maxwell was pulled aside by Defendants Curley and Cramb, who advised him to use "more caution with [his] choice of words." (*Id*.) Later that day, Maxwell was moved to A-Unit, a restricted housing block. He was advised by Deputy Bradley that he was being placed in restricted housing due to the comment that he made. (*Id.*)

Maxwell explains that his statements were deemed by the Defendants as having the possibility of inciting a riot. (ECF No. 2 at 9.) He was placed in the RHU for an investigational misconduct. The paperwork stated only: "Inmate… has been charged with, or is under investigation for[,] a violation of facility rules, and there is a need for increased control pending disposition of charges or completion of investigation." (ECF No. 2-1 at 1.) The paperwork provided to Maxwell failed to note any specific rules that were violated and did not note any witnesses to the alleged violations. (ECF No. 2 at 9.)

Maxwell alleges that Defendant's Curley and Cramb "target[ed him] with a[n] aggressive scheme manufactured to make bogus allegations against [him]… to show [Maxwell] who's the boss." (ECF No. 2 at 16.) He alleges further that Defendants Curley and Cramb treated him

---

[3] The allegations are taken from Complaint (*see* ECF No. 2) and the Exhibits to the Complaint (*see* ECF No. 2-1).

[4] The Court adopts the pagination supplied by the CM/ECF docketing system.

differently than similarly situated individuals, taking these actions against him without any stated "penological objective." (ECF No. 2-1 at 4.)

A program review was provided on October 21, 2020, and the paperwork indicates that Maxwell attended the meeting. (ECF No. 2-1 at 11). According to the paperwork, the investigation was "ongoing," and Maxwell was advised that the matter was rescheduled for October 28th. (*Id.*) Maxwell reports that he was never interviewed regarding any pending investigation. (ECF No. 2 at 9.)

On October 28, 2020, Maxwell was notified that placement in general population "would endanger the inmate's safety or welfare…. (COVID Quarantine)." (ECF No. 2-1 at 2.) As a result, Maxwell remained in restricted housing and was not returned to general population. This report is signed by Unit Manager Clark. (*Id.*) In his Complaint, Maxwell states that Defendant Strenkoski made the decision to continue his restricted housing status. (ECF No. 2 at 10.) He further alleges that the reference to "COVID Quarantine" was made even though he was never tested for nor exposed to COVID at that time. He alleges that this quarantine reference was not based on a request by medical staff and that "[n]o medical testing, records, [or] diagnoses represented the need" for a quarantine. (ECF No. 2 at 10.)

On October 29, 2020, Maxwell submitted a request to Ms. Clark, the unit manager in A-unit, requesting further information regarding the October 28, 2020 decision determining that he could not be placed in general population. Maxwell asked Ms. Clark to come to his cell to explain his status and noted that he had "been tested for COVID [and the] results were negative." (ECF No. 2-1 at 8.)

On October 30, 2020, Maxwell was returned to general population. (ECF No. 2-1 at 9.) Following his return to general population, Maxwell submitted grievances and appeals. He

alleges that Defendant Sober approved of his placement in the RHU without conducting an independent investigation. (ECF No. 2 at 13).

Maxwell alleges that he lost his prison job because of these events. (ECF No. 2 at 15.) He alleges further that he suffered mental trauma and is still experiencing depression and anxiety. (*Id.*)

Maxwell is suing all the Defendants in both their individual and official capacities. (*Id.* at 2-3.) The Court understands Maxwell to be raising Eighth Amendment and due process claims based on his placement in the RHU, as well as equal protection claims based on allegations that he was "single[d] out" and treated differently than other inmates. (*Id.* at 11 & 16.) He primarily seeks punitive and compensatory damages. (ECF No. 2 at 16.)

## II.    STANDARD OF REVIEW

The Court grants Maxwell leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[5] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Maxwell is proceeding *pro*

---

[5] However, as Maxwell is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

*se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Maxwell has failed to state a claim.

### A.   Official Capacity Claims

Maxwell names the Defendants, all of whom are identified as employees of the Pennsylvania Department of Corrections, in their individual and official capacities and seeks money damages. The official capacity claims against the Defendants for money damages may not proceed because the Eleventh Amendment bars suits for damages against a state and its agencies in federal court. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court. Accordingly, the official capacity claims against the Defendants are dismissed with prejudice. *See Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the

executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity"). The claims against the Defendants in their individual capacities are discussed below.

### B. Eighth Amendment Claims

Throughout his Complaint, Maxwell alleges in conclusory fashion that his placement in RHU was cruel and unusual and violated his rights under the 8th amendment. (ECF No. 2 at 3, 15). The broad allegation under the Eighth Amendment relates to several different allegations in the Complaint. Since each allegation fails to set forth a plausible Eighth Amendment claim, the claims are dismissed with prejudice.

To the extent Maxwell is alleging that placement in RHU as a general matter constitutes cruel and unusual punishment, the allegation does not provide a basis for relief. In general, conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.* Maxwell does not present any challenges to the conditions in RHU. Rather, the focus of his Complaint is on the fact of his placement in RHU and the process that was used in determining that placement and in maintaining that placement for eleven days. Those allegations do not equate to a sufficiently serious deprivation that would give rise to a claim under the Eighth Amendment. *See Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (noting that placement in administrative custody for

fifteen months did not set forth an Eighth Amendment claim, since the plaintiff failed to present "evidence that he was denied basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety"); *see also Jenkins v. Murray*, 352 F. App'x 608, 611 (3d Cir. 2009) (*per curiam*) (approving of dismissal of Eighth Amendment claim based on inmate's placement in administrative custody for three months where inmate failed to "allege that he was denied any basic human need").

Similarly, Maxwell's allegations that the grievance process violated his rights under the Eighth Amendment do not set forth a plausible claim for relief. Maxwell alleges that Defendants Strenkoski and Sober failed to provide him "at least a grievance conference." (ECF No. 2 at 12). Claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*). Accordingly, the facts alleged by Maxwell about the Defendants' handling of his grievances do not give rise to a plausible basis for a constitutional claim.

Maxwell also sets forth a conclusory allegation of deliberate indifference to medical needs under the Eighth Amendment. (ECF No. 2 at 4.) A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Maxwell does not present any allegation that the prison failed to provide medical treatment or was indifferent to his medical needs. It appears that this claim is premised on Maxwell's allegations that he remained in RHU for two additional days due to a "COVID quarantine." Maxwell alleges that this quarantine was not based on medical testing, but rather

7

the "defendants impersonated medical officials… to activate [their] cruel and unnecessary plan of action against plaintiff." (ECF No. 2 at 12). These facts do not give rise to a plausible basis for an Eighth Amendment claim.

Ultimately, these claims – either individually or collectively – fail to set forth a plausible basis for a claim under the Eighth Amendment. Further, the Court concludes that amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile."). Accordingly, the Eighth Amendment claims alleging "cruel and unusual punishment" will be dismissed with prejudice.

**C. Due Process Claims**

Next, Maxwell alleges that the actions of each Defendant violated his due process rights. He alleges that Defendants Curley and Cramb submitted a "bogus" misconduct report against him, causing his initial placement in RHU. Additionally, Maxwell alleges that Defendants Strenkoski and Sober caused him to remain in the RHU without sufficient investigation, hearing, or explanation.

These allegations are construed as an attempt to argue that the Defendants failed to provide Maxwell the procedural protections set forth by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974).[6] But these protections are inapplicable when the "discipline in

---

[6] *Wolff* set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. *Id.* at 563-67. In addition, the Supreme Court held that there must be "some evidence" which supports the conclusion of the disciplinary tribunal. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

segregated confinement [does] not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin v. Conner*, 515 U.S. 472, 486 (1995).

As a threshold matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Attorney Gen.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)); *see also Wolfe v. Pa. Dep't of Corr.*, 334 F. Supp. 2d 762, 773 (E.D. Pa. 2004). As the Supreme Court has explained, "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. *Sandin*, 515 U.S. at 485. As a result, a Court's focus must be on the "the nature of the deprivation" experienced by the prisoner. *See id.* at 481. "When considering whether an inmate's placement in segregated housing triggers a legally cognizable interest courts should consider: (1) the amount of time spent in segregation; and (2) whether the conditions of segregation were significantly more restrictive than those imposed on other inmates in segregation." *Allah v. Bartkowski*, 574 F. App'x 135, 139 (3d Cir. 2014) (citing *Shoats v. Horn,* 213 F.3d 140, 144 (3d Cir.2000)).

"[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 486)). Here, Maxwell alleges that he was held in the RHU for eleven days. That is not the type of atypical or significant hardship sufficient to trigger due process protection. *See Griffin*, 112 F.3d at 708 (holding that "exposure to the conditions of administrative custody for periods as long as 15 months falls within the expected parameters of the sentence imposed [. . .] by a court of law" and does not constitute a due process violation (quotation omitted)); *see also Williams v.*

9

*Armstrong*, 566 F. App'x 106, 108 (3d Cir. 2014) (*per curiam*) (prisoner failed to allege liberty interest based on four-month placement in the RHU).[7]

Since Maxwell's eleven-day placement in RHU is not sufficient to establish the kind of "atypical" deprivation of prison life to trigger due process protections, the due process claims against all Defendants do not give rise to a plausible basis for a constitutional claim. Further, the Court concludes that amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile."). Accordingly, the due process claim will be dismissed with prejudice.

**D. Equal Protection Claims**

Maxwell alleges that Defendants Curley and Cramb violated his rights under the Equal Protection Clause when they "targeted [him] with [an] aggressive scheme manufactured to make bogus allegations against [him]." (ECF No. 2 at 16.) He adds that he was "singled out and targeted and treated differently th[a]n all populated same situated inmates charged with serious violent and misconducts." (*Id.* at 12.) For the reasons set forth below, Maxwell's generalized

---

[7] To the extent that Maxwell's allegation of the loss of his prison job is an attempt to present a liberty interest that might give rise to a due process violation, the loss of his work assignment is not sufficient. Inmates do not have a constitutional right to employment during incarceration. *See Watson v. Sec' y Pa. Dep' t of Corr.*, 567 F. App' x 75, 78 (3d Cir. 2014) (*per curiam*) ("Inmates do not have a liberty or property interest in their job assignments that would give rise to Due Process Clause protection. Furthermore, the defendants' failure to reinstate him in his prison job did not violate his Eighth Amendment right to be free from cruel and unusual punishment.") (citations omitted); *Fiore v. Holt*, 435 F. App' x 63, 68 (3d Cir. 2011) (*per curiam*) ("[P]risoners enjoy no protected interest in prison employment."). Accordingly, any allegations premised on these facts do not give rise to a plausible basis for a constitutional claim and will be dismissed with prejudice.

allegations as currently pled are not sufficient to state an equal protection claim against the Defendants.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). The Court construes Maxwell's Complaint as asserting an Equal Protection claim under a "class of one" theory, rather than an allegation that he was treated differently due to his membership in a protected class.[8]

"Equal protection suits under a 'class of one' theory are appropriate where 'it appears that an individual is being singled out by the government' such that 'the specter of arbitrary classification is fairly raised.'" *Bag of Holdings, LLC v. City of Philadelphia*, 682 F. App'x 94, 98 (3d Cir. 2017) (quoting *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 602 (2008)). To state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips v. City of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "Under the rational basis standard, any rational ground for the conduct in question will suffice to defeat the class-of-one claim." *Aulisio v. Chiampi*, 765 F. App'x 760, 764–65 (3d Cir. 2019).

---

[8] To set forth an Equal Protection claim under a class-based theory, a plaintiff must allege that he is a member of a protected class and that he received different treatment than that received by other similarly situated individuals due to his membership in that protected class. *See Oliveira v. Twp. of Irvington*, 41 F. App' x 555, 559 (3d Cir. 2002). The Complaint sets forth no such allegations.

11

The Court understands Maxwell to be claiming that he was treated unfairly both with regard to his initial placement in the RHU and how his charge was processed once he was in the RHU. However, despite repeated references to "similarly situated" individuals, Maxwell's allegations are undeveloped and conclusory. *See Perano v. Twp. Of Tilden,* 423 F. App'x 234, 238 (3d Cir. 2011) ("At the motion to dismiss stage, Perano must allege facts sufficient to make plausible the existence of such similarly situated parties."); *see also Startzell v. City of Philadelphia, Pa.*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Norlinger v. Hahn*, 505 U.S. 1, 10 (1992)) ("Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'"). Maxwell fails to allege any facts to support an inference that there were other inmates who were treated more favorably in similar circumstances. He alleges that he was one of four "resident inmates" who were "holding a conversation" when he was "single[d] out," but he does not allege that any of the other inmates made similar statements to the one he made, which is what precipitated the misconduct. (ECF No. 2 at 16.)  Although he claims he was treated differently than other inmates charged with serious or violent misconducts, it is not clear from this vague allegation that these inmates were similarly situated or how they were treated more favorably. *See Jenkins*, 352 F. App'x at 610–11 ("We agree with the District Court's conclusion that Jenkins fails to state a claim for an equal protection violation, as he fails to allege that the other inmates had been placed in the RHU for the same reasons or in the same form of custody."). Accordingly, Maxwell has failed to state a plausible equal protection violation. *See Jones v. Sposato*, 783 F. App'x 214, 217 (3d Cir. 2019) (general allegations that plaintiff was treated "less favorably" are not sufficient);*Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012) (rejecting equal protection claim when inmate did "not allege facts showing that he was similarly situated to the inmates who received wheelchair footrests, crutches and

12

canes, or that there was no rational basis for his different treatment"); *see also Aulisio*, 765 F. App'x at 765 ("Under the rational basis standard, any rational ground for the conduct in question will suffice to defeat the class-of-one claim."). However, because the Court cannot state at this time that Maxwell can never state a plausible equal protection claim, he will be permitted to file an amended complaint if he is able to cure the defects the Court has identified in his equal protection claim. *See Phillips*, 515 F.3d at 245.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss Maxwell's Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The official capacity claims, and the Eighth Amendment and Due Process claims against all Defendants, are dismissed with prejudice since attempt at amendment would prove futile. *See Grayson*, 293 F.3d at 108. The Equal Protection claims are dismissed without prejudice and Maxwell will be permitted to file an amended complaint in the event he can cure the defects the Court has identified in those claims. An appropriate Order follows, which provides further instruction as to amendment.

                **BY THE COURT:**

                */s/ John M. Gallagher*
                **JOHN M. GALLAGHER, J.**